ALEXANDER T. COMPTON v. FREEMAN VAN VOLKENBURGH AND THE NEW JERSEY RAILROAD AND TRANSPORTATION COMPANY,

1. Whether a regulation of an incorporated company is reasonable and therefore valid, was held by this court in *Ayers* v. *M. & E. R. R. Co.*, 5 *Dutcher* 393, to be a question for the jury, and not for the court, and that decision will be followed by this court.
2. The rule is in opposition, apparently, to the more recent authorities, and the rule will probably, before long, be reviewed in the Court of Errors. *Per* BEASLEY, CHIEF JUSTICE.
3. An agent of a railroad company cannot expel a passenger from a ferry-boat for a violation of the rule of the company requiring such passenger to deliver his ticket at a certain gate, without first notifying such passenger that unless he leaves the boat such an extreme measure will be resorted to.

This case before this court was on a motion for a new trial. The facts are sufficiently stated in the opinion.

For plaintiff, *C. Parker.*

For defendants, *J. P. Jackson* and *I. W. Scudder.*

BEASLEY, CHIEF JUSTICE. The alleged wrong which has occasioned this suit is, that the plaintiff was put off a ferry-boat plying between Jersey City and New York, by Mr. Van Volkenburgh, one of the defendants. Upon the trial this expulsion was attempted to be justified on the ground that the plaintiff, in contravention of the regulations of the New Jersey Railroad and Transportation Company, passed on to the boat through a gateway exclusively appropriated to teams and other vehicles, instead of through the gateway designed for passengers, and that he refused to leave the boat when directed so to do.

At the trial it was left as a fact to be found by the jury, whether the regulation forbidding the transit of passengers through this large gateway was reasonable; the jury being

instructed that if they so found, the regulation was legal, and that under such circumstances Van Volkenburgh, as the authorized agent of the company, had the right to enforce it. The submission of this question to the jury was then objected to by the counsel of the defendants, and is now urged as one of the grounds for a new trial, the position being that this is a question for the court, and not for the jury. But I cannot consider this as an open question, so far as this court is concerned. That the reasonableness of a by-law of a corporation is a question of law and not of fact, has always been the established rule ; but in the case of the *State* v. *Overton*, 4 *Zab.* 435, a distinction is taken in this respect between a by-law and a regulation, the validity of the former being a judicial question, while the latter was regarded as a matter *in pais*. But, although in one of the opinions read in the case referred to, the view was clearly expressed that the reasonableness of a corporate regulation was properly for the consideration of the jury, and not of the court, yet it was nevertheless stated that the point was not involved in the controversy then to be decided. There is no doubt that the rule thus intimated is in opposition to recent American authorities. Nor have I been able to find in the English books any such distinction as that above stated between a by-law and a regulation of a corporation. The submission of such a question to a jury appears on many grounds objectionable and in opposition to legal analogies. But the rule thus indicated was explicitly adopted and enforced in the *Morris & Essex R. R.* ads. *Ayers*, 5 *Dutcher* 393, and I think that decision is binding on this court. The counsel of the plaintiff in this suit had a right to try his case with reference to that adjudication, and with an assurance that the rule there established would not at all events, in this court, be disowned. The question is one of so much importance, that it will, doubtless, before long, be presented for the consideration of the Court of Errors, when it will be definitively adjudicated. In the meantime, I think the decision just alluded to must be followed.

But it is further insisted that the regulation was a reasonable one in point of fact, and that the jury were bound to so find. This view I think is correct. The company had a right to require the passengers to pass through a different gate than that by means of which horses and vehicles were admitted to the ferry. As the company have the right to ascertain that persons passing on to the ferry are provided with tickets and have the right to require the delivery, in a convenient manner, of such tickets to a particular officer at a particular place, it results, as a necessary consequence, that the right exists to prohibit the entering of the ferry except at an appointed gate. The instructions of the judge before whom the case was tried were clear and judicious upon this point, and I see no reason to doubt that this regulation was considered valid by the jury.

After a careful examination of the evidence, I am satisfied the jury were entirely justified in finding a verdict against the defendants, on the ground that the regulation in question was enforced by Mr. Van Volkenburgh, the agent of the company, with undue precipitancy and violence. The principal facts, as I read them, can be compressed in a few words. The plaintiff had a ferry ticket, but instead of passing through the small gate, which was for passengers, he entered the ferry through the large gate, intended for horses and vehicles. In doing this, he violated the regulation above mentioned, but, to all appearance, he did so innocently. The plaintiff was in haste, as he heard a shout that the boat was starting. As he went through the large gate he tendered his ticket to Mr. Van Volkenburgh, who was the gate tender at that entrance, who replied, "I cannot take it," and with that the plaintiff hurried on. From this point—this is the plaintiff's description of the occurrence—"I heard him say 'go around,' and as I proceeded towards the boat rapidly, I heard him call out to me; I did not heed, but jumped upon the boat; I heard some one running after me; I did not know who it was, but I was addressed by the person whom I met at the gate; he said, 'get off here;' I said I would not; he said

you have got to get off here; I said I have got a ticket, and put my hand in my pocket and got it, and he said, ' it makes no difference, you have got to get off here; ' he had no sooner said these words, but he seized me by the collar and jerked me from the railing," &c.   The plaintiff was then dragged from the boat, and pushed back and through the gate at which he had entered.   This statement of the plaintiff is corroborated by the testimony of several witnesses who appear to have been mere casual spectators of the scene. The evidence produced for the defence, if credited, would have a tendency to show that the plaintiff exhibited some rudeness in his refusal to leave the boat, and slightly to mitigate the misconduct of the defendant.   I think the evidence of the plaintiff on this point strongly preponderates; at all events, the jury had a right to come to that conclusion—and with that result as a basis of action, they could not properly find for the defence.   My reason for saying this is, that in my opinion this agent of the railroad company had no right to expel this plaintiff from the boat without first informing him of the existence of the regulation of the company.   Nor had he any right to touch his person without first notifying him that unless he left the boat he would resort to such extreme means to put him off.   The facts stand thus: a passenger is told by a subordinate officer of a railroad company to get off a boat; the passenger replied I will not, I have got a ticket; the reply is, "it makes no difference, you have got to get off here," and without more, he is seized by the collar, and, in the presence of many lookers-on, he is ignominiously expelled.   I do not see but that all reasonable men must unite in condemnation of such precipitate violence and indignity.   The jury found $200 damages; if they had awarded two or three times that amount I should not have found any fault.   These agents of incorporated companies must be taught that personal violence must not be used, except as a last resort, and after explicit notification.   I see that the defendant said, speaking of his seizure of the person of the plaintiff, that he " had to do it

quick, because the boat was leaving." The verdict will teach him, and others in similar situations, that unless there is time for explanation, violence cannot be done with impunity to the person of a passenger, and it seems to me the lesson will be a wholesome one. The verdict rests on the ground that the violence used was exercised without proper circumspection, and under the circumstances, therefore, exhibited excess.

A new trial should be refused.

DEPUE and WOODHULL, Justices, concurred.